RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 07a0464p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

BRIDGEPORT MUSIC, INC.,

*Plaintiff-Appellant*,

WESTBOUND RECORDS, INC., et al.,

*Plaintiffs*,

*v.*

WB MUSIC CORP., et al.,

*Defendants,*

UNIVERSAL-MCA MUSIC PUBLISHING, INC.,

*Defendant-Appellee*.

No. 06-5546

---

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 01-00763—Todd J. Campbell, Chief District Judge.

Argued: October 22, 2007

Decided and Filed: November 21, 2007

Before: MARTIN, GIBBONS, and SUTTON, Circuit Judges.

---

## COUNSEL

---

**ARGUED:** Richard S. Busch, KING & BALLOW, Nashville, Tennessee, for Appellant. Russell J. Frackman, MITCHELL, SILBERBERG & KNUPP, Los Angeles, California, for Appellee. **ON BRIEF:** Richard S. Busch, KING & BALLOW, Nashville, Tennessee, for Appellant. Russell J. Frackman, Marc E. Mayer, MITCHELL, SILBERBERG & KNUPP, Los Angeles, California, Philip M. Kirkpatrick, STEWART, ESTES & DONNELL, Nashville, Tennessee, for Appellee.

---

## OPINION

---

JULIA SMITH GIBBONS, Circuit Judge. Plaintiff-appellant Bridgeport Music, Inc. ("Bridgeport") appeals the district court's grant of summary judgment in favor of defendant-appellee Universal-MCA Music Publishing ("Universal") in this copyright infringement case alleging that Universal interpolated the lyrics to the recording *Pumpin' It Up* in the recording *Change Gone*

1

*Come*. For the reasons set forth below, we affirm the district court's grant of summary judgment in favor of Universal.

## I.

*Pumpin' It Up* was composed by the P-Funk All Stars: Gary Shider, Linda Shider, Barbarella Bishop, and Gary Ford. The album "Urban Dancefloor Guerillas" was released in 1983 and contained the recording *Pumpin' It Up*. In 1995, the album was re-released on compact disc with the title "Hydraulic Funk." Bridgeport owns a one hundred percent ownership interest in *Pumpin' It Up*.

Calvin Broadus ("Snoop Dogg"), Priest Joseph Brooks, and Lenton ("L.T.") Hutton composed *Change Gone Come*. Universal and Hutton, doing business as T-Funk Music Universal ("T-Funk"),[1] entered into an "Exclusive Songwriter & Co-Publishing Agreement" on January 31, 2000.[2] Through this exclusive publishing agreement, Universal acquired a twenty-five percent interest in the copyright in certain songs, such as *Change Gone Come*, or fifty percent of T-Funk's fifty percent share in the recording. The agreement provided that Songs of Universal obtained "without limitation, universe-wide exclusive administration rights" over Hutton's works, including the right to license the use of included compositions. The other writers own the remainder of the copyright in *Change Gone Come*.

In May 1999, Soul Town released the album "Well Connected" that contained a recording of *Change Gone Come*. In October 2000, D-3 Albums released the album "Dead Man Walkin" that contained a recording of *Change Gone Come*.

Universal never manufactured, distributed, or sold either the albums "Well Connected" and "Dead Man Walkin'" or any recording containing *Change Gone Come*. Universal issued no licenses in connection with *Change Gone Come*. Specifically, it issued no licenses authorizing the use of *Change Gone Come* in connection with either the album "Well Connected" or the album "Dead Man Walkin." Universal does not control the public performance of *Change Gone Come* and has never performed it.

Universal received royalties in connection with *Change Gone Come*. It received $.86 from Touchtunes Music Corporation in mechanical royalties, approximately $600 in foreign royalties, and $.38 from BMI in performance royalties. Bridgeport, however, has not received any royalties or income from the alleged interpolation of *Pumpin' It Up* in *Change Gone Come*. Moreover, no license exists for the use of *Pumpin' It Up* in *Change Gone Come*.

On November 28, 2000, Bridgeport discovered the alleged infringement. In May 2001, Bridgeport filed this lawsuit. On September 28, 2001, Bridgeport filed a first amended complaint in which it alleged claims for copyright infringement, a declaratory judgment, a permanent injunction, and an accounting. The first amended complaint alleges:

> Rap artists Calvin Broadus a/k/a Snoop Dogg and Michael Hutchence performed the
> Infringing Composition and Sound Recording "Change Gone Come" on the "Dead

---

[1] Songs of Universal, the signatory to the agreement, will be referred to as Universal for purposes of this opinion.

[2] The only agreement in the record was entered into on January 31, 2000, although (as Bridgeport points out) this agreement references prior agreements dated August 28, 1996, and August 1, 1998. Because there is no evidence in the record to establish what supervisory rights the prior agreements gave Universal, their existence does not change our analysis.

Man Walkin" and "Well Connected" records. "Change Gone Come" contains sampled and/or interpolated portions of the Bridgeport and/or Southfield-owned musical composition and the Westbound and/or Nine-owned sound recording "Pumpin' It Up," which were included without license or agreement from the applicable Plaintiffs, the inclusion of which greatly enhanced the musical and financial value of "Change Gone Come."

Bridgeport contends that Universal interpolated the vocals "I feel like Pumpin' It Up, Feel Like Pumpin' It Up" with the vocals "I Feel Like Givin' It Up, Real Like Livin' It Up."

On November 14, 2005, Universal filed a motion for summary judgment. On February 24, 2006, United States Magistrate Judge Joe Brown issued a report and recommendation in which he recommended that United States District Judge Todd Campbell grant Universal's motion for summary judgment. Judge Brown determined that there was no genuine issue of material fact regarding whether Universal issued a license in the infringing works. He concluded that Universal met its initial burden and Bridgeport failed to introduce evidence to meet its resulting burden that Universal had infringed Bridgeport's copyright. He added that the receipt of royalties alone was insufficient to create contributory copyright infringement. On April 6, 2006, Judge Campbell adopted the magistrate judge's report and recommendation while overruling Bridgeport's objections to it. Judge Campbell entered final judgment on May 22, 2006, following the voluntary dismissal of another defendant, T-Funk.

## II.

### A.

We review a district court's decision to grant summary judgment *de novo*. *Pagan v. Fruchey*, 492 F.3d 766, 770 (6th Cir. 2007) (citation omitted). Summary judgment may be granted only if there are no genuine issues of material fact and one party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should be made in favor of the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To support its motion, the moving party may show "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In reviewing a district court's decision to grant summary judgment, we view all the facts and the inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

### B.

Direct copyright infringement occurs when anyone "violates any of the exclusive rights of the copyright owner." 17 U.S.C. § 501(a). These include the rights to reproduce the copyrighted work and to create a derivative work based on it. 17 U.S.C. § 106(1), (2). Copyright infringement has two elements: "(1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original." *Stromback v. New Line Cinemas*, 384 F.3d 283, 293 (6th Cir. 2004) (citation and quotation marks omitted). "Contributory infringement occurs when one, with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another." *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 621 (6th Cir.

2004) (citation and internal quotation marks omitted). "A defendant can be held vicariously liable if he enjoys a direct financial benefit from the infringing activity and has the right and ability to supervise the infringing activity." *Id.* (internal quotation marks and citation omitted).

i.

Bridgeport contends Universal granted an oral, written, or implied license in *Change Gone Come* as the recording appeared on the albums "Well Connected" and "Dead Man Walkin." Universal introduced an affidavit that it issued no licenses in connection with *Change Gone Come*. Specifically, according to the affidavit, it issued no licenses authorizing the use of *Change Gone Come* in connection with either the album "Well Connected" or the album "Dead Man Walkin." The affidavit adds that Universal does not control the public performance of *Change Gone Come* and has never performed it. With the affidavit, Universal satisfied its initial burden and the burden shifted to Bridgeport to introduce evidence that Universal granted a license in *Change Gone Come*. Bridgeport failed to meet its resulting burden as it failed to introduce any evidence of a license.

Bridgeport argues that a reasonable trier of fact could infer that an oral or implied license had been granted based on certain circumstantial evidence. This evidence includes the facts that Bridgeport held a copyright in *Pumpin' It Up*, that Universal held a copyright in *Change Gone Come*, and that *Change Gone Come* contains an unauthorized interpolation of *Pumpin' It Up*.[3] It also includes Universal's receipt of royalty payments for *Change Gone Come* in contexts not related to the albums "Well Connected" and "Dead Man Walkin."

Under the binding Sixth Circuit precedent of *Rhyme Syndicate*, the circumstantial evidence relied upon by Bridgeport cannot create a genuine issue of material fact as to whether Universal granted a license in *Change Gone Come* as the recording appeared on the albums "Well Connected" and "Dead Man Walkin." As here, the defendant in *Rhyme Syndicate* submitted an affidavit that it had not granted a license for use of the composition at issue. *Id.* at 622. At that point the burden was on the plaintiff Bridgeport to come forward with evidence connecting the defendant to the distribution and sale of the album. *Id.* Bridgeport failed to do so, however, because "neither status as a co-owner of the composition, nor its contractual right to administer the composition and receive and distribute royalties is sufficient to create a genuine issue of material fact." *Id.* There is no meaningful distinction between the evidence with which Bridgeport sought to meet its burden in *Rhyme Syndicate* and that which it offers in this case. The evidence of an infringing act and Universal's partial ownership interest in the *Change Gone Come* copyright does not permit the inference that Universal granted a license. Similarly, Universal's receipt of royalties not connected to the two albums at issue cannot permit an inference that Universal granted a license permitting the inclusion of *Change Gone Come* on the albums.

Bridgeport insists that we should not rely on *Rhyme Syndicate*, 376 F.3d at 618, because its facts are different from this case. It notes that this action, unlike the action in *Rhyme Syndicate*, was filed less than three years after the composition was conceived. *See id.* Because the applicable limitations period is three years, it argues "there can be no doubt that all infringing conduct which Bridgeport alleged in its complaint unavoidably occurred within the period of limitations." The factual difference asserted by Bridgeport in no way affects the precedential value of *Rhyme Syndicate*. While any infringing act in this case may well have occurred within the limitations period, the resolution of the appeal does not turn on a limitations issue, but on Bridgeport's failure to present evidence connecting Universal with an infringing act, at whatever point it occurred. *Rhyme Syndicate*'s separate holding with respect to connecting the defendant to infringing activity is

---

**3**The parties did not brief the issue of whether the disputed interpolations "are sufficiently similar to constitute infringement," and consequently the district court assumed they were for purposes of its ruling. We make the same assumption in resolving the appeal.

implicated here, not its holding that Bridgeport failed to establish an infringing act within the limitations period on which it could base the defendant's contributory infringement or vicarious liability.

In addition to its argument that the evidence permits an inference that Universal granted a license, Bridgeport asserts that Universal is liable for its role in the chain of distribution as the originator of the infringing composition. In a seemingly related argument, it contends that wrongful conduct is infringement even if the infringer derives no monetary profit from the conduct. Both arguments skirt the requirement that Bridgeport present evidence of conduct by Universal connecting it to the allegedly infringing act. *See id*. at 622-23. No such evidence exists here.

ii.

In its briefing regarding royalties received by Universal, Bridgeport apparently goes beyond a mere assertion that the royalties permit the inference that Universal granted a license with respect to inclusion of *Change Gone Come* on the albums and argues that they are more general evidence of infringement. The royalties in question are $.86 from Touchtunes Music Corporation in mechanical royalties, approximately $600 in foreign royalties, and $.38 from BMI in performance royalties in connection with *Change Gone Come*. As previously noted, there is no evidence in the record suggesting that any of these royalties derive from the inclusion of *Change Gone Come* in the albums.

Bridgeport's first amended complaint alleges liability on the part of Universal based only on the inclusion of *Change Gone Come* in "Well Connected" and "Dead Man Walkin." To the extent Bridgeport seeks to expand its claims to assert new theories, it may not do so in response to summary judgment or on appeal. *See e.g.*, *Harvey v. Great Seneca Fin. Corp*., 453 F.3d 324, 329 (6th Cir. 2006) ("Allowing [plaintiff] to present a new theory of her case on appeal that was not alleged below would permit her two bites at the apple, a practice that would be very disruptive of orderly trial procedure."); *Tucker v. Union of Needletrades, Indus. and Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (holding that a plaintiff may not raise a new legal claim in response to summary judgment); *Mich. Bell Tel. Co. v. Strand*, 305 F.3d 580, 589-90 (6th Cir. 2002) (declining to address a new argument on appeal where a party had knowledge of and opportunity to assert the new theory in the district court).

iii.

Liability for contributory infringement derives from the defendant's relationship to the direct infringement. *Rhyme Syndicate Music,* 376 F.3d at 621 (citing *Ez-Tixz, Inc. v. Hit-Tix, Inc.*, 919 F. Supp. 728, 732-33 (S.D.N.Y. 1996)). Contributory infringement occurs when one, "with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another." *Id.* (citing *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)). "A defendant can be held vicariously liable if he enjoys a direct financial benefit from the infringing activity and 'has the right and ability to supervise' the infringing activity." *Id.* (quoting *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004)).

Bridgeport argues that Universal is liable for both vicarious and contributory infringement of *Change Gone Come*. The vicarious liability, it argues, arose because Universal "has the right to police the infringements" of T-Funk. It, however, has not supported this assertion with evidence. While Universal entered into an exclusive publishing agreement with Hutton, the agreement merely provides Universal with the right to own and exploit his works, not to control his song writing activities. *Cf. Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 750–51 (1989) (holding that the Copyright Act distinguishes between employees and independent contractors for copyright possession). There is no vicarious liability because "[t]he record fails to demonstrate [Universal's] connection to, much

less the ability to supervise or control, the infringing activity." *Rhyme Syndicate Music*, 376 F.3d at 623.

Bridgeport argues "Universal knew or had reason to know of the infringement" as the co-owner and administrator of *Change Gone Come*. There is no contributory infringement because Bridgeport introduced no evidence that Universal induced, caused, or contributed to the infringement of another party. For example, it introduced no evidence that Universal encouraged Hutton to interpolate *Pumpin' It Up* into *Change Gone Come* or that Universal encouraged the publication of the allegedly infringing albums.

In *Vasquez v. Torres-Negron*, a district judge granted in part and denied in part summary judgment in a copyright infringement action, holding that maintaining a licensing agreement with a performing rights organization and collecting royalties precluded summary judgment in favor of the defendant. 2007 WL 2244784, at *13-14. (S.D.N.Y. July 11, 2007). The district judge explained that the "registration of [the song] with [the performing rights organization] induces infringement of [the other song] by inviting people, musical groups, or radio stations to perform or broadcast the song for a fee," and this could lead to liability as a contributory infringer. *Id.* at 13. The court explained that the plaintiff received a royalty payment for $6.90 and as it was not clear what the payment was for, a jury would determine the amount received for royalties related to the song. *Id.* at 14. Bridgeport, however, cannot prevail on this theory because it failed to allege infringement relating to the receipt of mechanical, performance, or foreign royalties in the first amended complaint.

### C.

Universal argues that it was not the proper defendant to name in this lawsuit. Rather, it argues, Universal Studios, Inc. "never owned, administered, or had any other involvement with *Change Gone Come*." Instead, it argues, another Universal entity, Songs of Universal, possesses an ownership interest in *Change Gone Come*. As we affirm on other grounds, we do not reach this issue.

### III.

For the foregoing reasons, we affirm the judgment of the district court.