**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0214n.06

No. 12-3656

**FILED**
**Feb 28, 2013**
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

TRENT RENNER,

      Plaintiff-Appellant,

v.

FORD MOTOR COMPANY;
INTERNATIONAL UNION, UNITED
AUTOMOBILE AEROSPACE &
AGRICULTURAL IMPLEMENT WORKERS
OF AMERICA (UAW); LOCAL 1219,
UNITED AUTOMOBILE, AEROSPACE &
AGRICULTURAL IMPLEMENT WORKERS
OF AMERICA,

      Defendants-Appellees.

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO**

_____/

**BEFORE:**    **MERRITT, CLAY, and GRIFFIN, Circuit Judges.**

     **CLAY, Circuit Judge.** Plaintiff Trent Renner appeals the district court's grant of summary judgment in favor of his employer, Ford Motor Company, and his union, the UAW. Plaintiff brought an action under § 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185, alleging that Ford violated his collective bargaining agreement and that the UAW breached its duty of fair representation. Because Plaintiff cannot establish that the UAW acted arbitrarily or in bad faith in its representation of him, we **AFFIRM** the district court's grant of summary judgment.

**BACKGROUND**

In 1999, Plaintiff Trent Renner began working for Ford Motor Company's transmission plant in Sharonville, Ohio. He would have preferred to work at Ford's engine plant in Lima, Ohio, near where he grew up and lived, but there were no openings available at the Lima plant when he started work. He was reassured by UAW officials that he would be able to transfer at the first opportunity, but no positions became available. For the next six years, Plaintiff commuted approximately four hours each day from his home in Columbus Grove, Ohio, to the Sharonville plant. Understandably, this long commute took its toll on Plaintiff's family life and finances.

Under the collective bargaining agreement ("CBA") between the UAW and Ford, there are two ways that Plaintiff could have obtained a transfer to the Lima plant. First, he could have quit at Sharonville and been rehired at Lima, but under this "quit and rehire" scenario, he would have lost the plant seniority that he had acquired at Sharonville. Second, Plaintiff could have applied for a position at Lima if an opening was posted at Sharonville; in this scenario, he would have retained his full plant seniority after the transfer. Plaintiff obviously preferred this second route so that he might keep his plant seniority intact, but no transfer opportunities arose during the years he worked at the Sharonville plant.

Knowing that Plaintiff wished to transfer to Lima, a local UAW official named Brett Fox reached an understanding with Jack Halverson, an official with Ford's labor affairs department, to transfer Plaintiff and another employee named Shawn Paradore to the Lima plant while keeping their seniority, even though no postings were then available for transfers. Fox and others believed that Ford would be adding a new engine line at the Lima plant in the near future, creating new openings

2

which could be filled by Plaintiff and Paradore, with their seniority retroactively adjusted accordingly. Plaintiff transferred to the Lima plant in April 2006, but was not told of the deal between Fox and Halverson at the time. Plaintiff initially believed he had been transferred to fill a posted opening, but soon after arriving, there was some confusion among Ford's human resources personnel as to Plaintiff's status, and he was labeled a "quit and rehire" employee, with the corresponding loss of seniority.

Plaintiff was reassured by then-Local 1219 Chairperson Dan Hinegardner that his seniority would be preserved. In May 2006, Hinegardner filed a grievance with Ford to adjust Plaintiff's seniority to his original 1999 hire date, but that grievance was denied because Plaintiff had officially quit and been rehired, rather than transferring in response to a job posting. Plaintiff's reduced seniority did not adversely affect him and no further action was taken until 2009, when at the height of the economic downturn for the American auto industry, layoffs were announced at the Lima plant. Plaintiff found himself on a layoff list because of his 2006 seniority date. To follow through on its promises to Plaintiff, the UAW reinstated the original 2006 grievance and reached yet another deal with Ford to restore Plaintiff's 1999 plant seniority in accordance with the original understanding between the UAW's Fox and Ford's Halverson. The grievance was favorably resolved in February 2009, and Plaintiff returned to work after having been laid off for approximately two weeks.

By this time, Local 1219 had a new chairperson named Dan Weaver, who was not aware of the 2006 understanding between Fox and Halverson. After learning that Plaintiff and Paradore had received what they perceived as special treatment, many employees at the Lima plant were upset. Weaver promised in a written letter to the union membership that he would investigate how

3

Plaintiff's seniority had been retroactively adjusted. One of these employees, Jeremi Brayton, had transferred into the Lima plant as a "quit and rehire" employee just as Plaintiff had. Brayton, citing Plaintiff's treatment, filed a grievance requesting that his plant seniority be retroactively adjusted as well. After Brayton's grievance was initially denied, local UAW officials refused to pursue it further. Brayton appealed that decision to the UAW's International Executive Board ("IEB"), the union's governing body. The IEB launched an investigation into the seniority adjustments at the Lima plant, and in May 2010 issued a written decision in which it found that the original deal between Fox and Halverson to have Plaintiff and Paradore transferred to Lima was made without "contractual support." The IEB found that the CBA did not provide for hardship transfers, and it ordered Plaintiff's grievance reinstated. Plaintiff was given a choice between remaining at the Lima plant with his plant seniority based on his 2006 transfer or returning to the Sharonville plant.

On September 17, 2010, Plaintiff filed a complaint in the Northern District of Ohio. He asserted that Ford breached its obligations under the CBA by failing to adhere to the original 2009 resolution of his grievance, in violation of § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185. Plaintiff also alleged that the UAW breached its duty of fair representation when the IEB reversed the union's prior decision restoring his full plant seniority. Defendants moved for summary judgment on November 1, 2011. In response, Plaintiff for the first time alleged that his claim was also based on the original 2006 deal between Fox and Halverson and the favorable resolution of his grievance in 2009. The district court granted Defendants' motions for summary judgment on May 1, 2012, finding that no evidence supported Plaintiff's claim that the UAW had breached its duty of fair representation. Plaintiff timely appealed.

4

## DISCUSSION

We review the grant of summary judgment *de novo*, construing the evidence and drawing all reasonable inferences in favor of the nonmoving party. *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "'[T]here must be evidence on which the jury could reasonably find for the' non-moving party." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). In other words, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Plaintiff filed suit against Ford and the UAW under § 301 of the LMRA, 29 U.S.C. § 185. Under normal circumstances, a unionized employee who believes that his or her employer has violated a CBA is required to pursue and exhaust the arbitration and employee-grievance procedures outlined in the CBA itself. *See Roeder v. Am. Postal Workers Union, AFL-CIO*, 180 F.3d 733, 738 (6th Cir. 1999). This requirement stems from the LMRA's preference for arbitration and the in-house resolution of employee grievances. *See Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 630 (6th Cir. 2009) (citing *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 653 (1965)). Employees are thus forced to turn to their unions before they turn to the courts; "the worker must persuade his union to prosecute his grievance and to submit it to arbitration." *Id.* However, if the available employee-grievance procedures would be futile or if the union has sole power under the

contract to invoke the grievance procedures and fails to do so, the employee may pursue a so-called "hybrid § 301" suit in federal court. *See id.* at 630–31 (citing *Vaca v. Sipes*, 386 U.S. 171 (1967)).

"A hybrid § 301 suit implicates the interrelationship among a union member, his union, and his employer." *Garrish v. UAW*, 417 F.3d 590, 594 (6th Cir. 2005) (quoting *Vencl v. Int'l Union of Operating Eng'rs, Local 18*, 137 F.3d 420, 424 (6th Cir. 1998)). "To recover against a union under § 301, the union member must prove both (1) that the employer breached the collective bargaining agreement and (2) that the union breached its duty of fair representation." *Id.* Both prongs must be satisfied for Plaintiff to succeed against either Defendant. *Id.*

### The UAW's Duty of Fair Representation

The National Labor Relations Act imposes a duty of fair representation on unions that are selected as the exclusive representatives of employees in a bargaining unit. *See Vaca*, 386 U.S. at 177. This duty is not expressly stated in the statute, but derives from "the union's status as the employees' exclusive bargaining representative." *Driver v. U.S. Postal Serv., Inc.*, 328 F.3d 863, 868 (6th Cir. 2003); *see also DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983) (finding that the duty of fair representation is "implied under the scheme of the National Labor Relations Act"). In the labor relations context, as elsewhere, "the exercise of a granted power to act in behalf of others involves the assumption toward them of a duty to exercise the power in their interest and behalf." *Steele v. Louisville & N.R. Co.*, 323 U.S. 192, 202 (1944). "The duty stands 'as a bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law.'" *DelCostello*, 462 U.S. at 164 n.14 (quoting *Vaca*, 383 U.S. at 182).

In *Vaca*, the Supreme Court defined the contours of the unions' duty: "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca*, 386 U.S. at 190. This test provides "three separate and distinct possible routes by which a union may be found to have breached its duty." *Driver*, 328 F.3d at 868–69 (citation omitted). In this case, Plaintiff alleges that his treatment by the UAW was both arbitrary and in bad faith.

A union's action is "arbitrary" "only if [its conduct] can be fairly characterized as so far outside a 'wide range of reasonableness' that it is wholly 'irrational.'" *Air Line Pilots v. O'Neill*, 499 U.S. 65, 78 (1991) (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953)). A union's decision not to take further action on an employee grievance that it deems meritless will not violate the duty of fair representation, provided it makes that determination in good faith. *See Driver*, 328 F.3d at 869. Furthermore, a union does not violate its duty merely by failing to consult with an employee before settling his grievance. *Courie*, 577 F.3d at 631.

A union acts in "bad faith" when "it acts with an improper intent, purpose, or motive . . . encompass[ing] fraud, dishonesty, and other intentionally misleading conduct." *Merritt v. Int'l Ass'n of Machinists & Aerospace Workers*, 613 F.3d 609, 619 (6th Cir. 2010) (citation omitted). The Supreme Court has repeatedly emphasized that courts examining union performance "must be highly deferential," recognizing the "wide latitude" needed by union officials to effectively carry out their duties on behalf of union members. *O'Neill*, 499 U.S. at 78. Plaintiff argues that the UAW breached its duty of fair representation with respect to three incidents: (1) the loss of his plant seniority when he was first transferred from Sharonville to Lima in 2006, (2) the union's handling of the restoration

of his plant seniority at Lima in 2009, and (3) the union's 2010 decision to reinstate Plaintiff's plant seniority as of his 2006 transfer to Lima or allow him to return to Sharonville.

## A. Loss of Seniority After the 2006 Transfer to Lima

Plaintiff claims that the UAW and Ford made "two illicit 'deals'" when they arranged to have him transferred from Sharonville to Lima in 2006 and then restored his seniority in 2009. In doing so, Plaintiff contends that Defendants essentially agreed with each other to violate the CBA, and by failing to tell Plaintiff about these deals, the UAW breached its duty of fair representation. Because Plaintiff failed to raise this claim at the proper time and because he cannot make the requisite showing of bad faith on the part of the union, this claim fails as a matter of law.

First, Plaintiff argued that his 2006 transfer was the basis of his § 301 claim for the first time in response to Defendants' motions for summary judgment. Plaintiff's complaint focused exclusively on the UAW's 2010 reversal of his 2009 grievance resolution. Only in response to Defendants' motions for summary judgment did Plaintiff theorize that past deals between Ford and the UAW constituted violations of the union's duty of fair representation. It is well-settled that a plaintiff may not expand its claims to assert new theories in response to summary judgment or on appeal. *Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007). "At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Rule 15(a)." *Tucker v. Union of Needletrades*, 407 F.3d 784, 788 (6th Cir. 2005) (citing 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2723 (3d ed. Supp. 2005)). "To permit a plaintiff to do otherwise would subject

defendants to unfair surprise." *Id.* Plaintiff neither amended his complaint nor sought leave to do so, and he cannot now claim his initial loss of plant seniority in 2006 as a basis for his § 301 claim.[1]

Even if Plaintiff had properly raised this incident in his complaint, he cannot make the requisite showing of bad faith. Plaintiff argues that, had he been told of the deal worked out between the UAW's Brett Fox and Ford's Jack Halverson to have him transferred to Lima before a posting became available, he would have chosen to remain at Sharonville. That argument falls short of establishing that the union acted in bad faith, particularly when considered against the evidence presented to the district court—all of which indicated that the union had acted on Plaintiff's behalf to facilitate the transfer that he so desperately wanted.

Plaintiff admits that he was told soon after he arrived at Lima that his plant seniority had not been preserved. Plaintiff was therefore aware that a problem existed with his plant seniority, and he was reassured by union leaders that the problem would be resolved. The uncontroverted evidence shows that UAW officials did indeed attempt to preserve Plaintiff's plant seniority and acted to

---

[1] The district court determined that this claim was also barred by the six-month statute of limitations that applies to hybrid § 301 claims. *See Garrish*, 417 F.3d at 594 (citing *DelCostello*, 462 U.S. at 169). "Such a claim accrues when an employee discovers, or should have discovered with exercise of due diligence, acts giving rise to the cause of action." *Wilson v. Int'l Bhd. of Teamsters*, 83 F.3d 747, 757 (6th Cir. 1996). The UAW argues that the incidents in 2006 and 2009 are distinct, actionable events that Plaintiff cannot now challenge because he should have known of the existence of a cause of action when they occurred. However, plaintiffs are "not required to sue on a hybrid claim until . . . [they] reasonably should know that the union has abandoned [their] claim." *Id.* As far as Plaintiff knew, the union was working to ensure that he kept his Sharonville plant seniority; indeed, the UAW's Dan Hinegardner filed a grievance to that effect on his behalf. Plaintiff could not have known that the UAW would abandon this grievance until the IEB reinstated the 2009 grievance resolution and resolved it unfavorably to Plaintiff in 2010. Because Plaintiff could not have known of a cause of action against the union until 2010, claims related to the union's 2006 conduct are not barred by the six-month statute of limitations.

honor the deal that had brought Plaintiff to Lima with his full seniority intact. The Chairperson of UAW Local 1219, Dan Hinegardner, filed a grievance on Plaintiff's behalf to ensure that his seniority was preserved. Because there is no evidence that the union acted with an improper motive when it arranged with Ford to have Plaintiff transferred to Lima, Plaintiff cannot maintain an action for breach of the duty of fair representation on this basis.

**B.      Restoration of Full Plant Seniority in 2009**

Plaintiff's argument with respect to the restoration of his full seniority in 2009 fails for similar reasons. In 2009, when layoffs were imminent, the union followed through on its promises to Plaintiff by agreeing with Ford to favorably resolve the 2006 grievance and restore Plaintiff's full plant seniority. Plaintiff raised this second "illicit deal[]" for the first time in response to Defendants' motions for summary judgment, without seeking to amend his complaint. Therefore, this argument is unpreserved. *See Bridgeport Music*, 508 F.3d at 400. Nevertheless, the argument lacks merit because Plaintiff cannot show that the UAW acted in bad faith when it arranged with Ford to uphold the original deal to have Plaintiff transferred to Lima with his full company seniority intact. The union cannot be said to have violated its duty of fair representation when it successfully obtained a favorable grievance resolution—one that accomplished exactly what Plaintiff had been promised.[2]

---

[2] Plaintiff also argues that the UAW breached its duty of fair representation when Local 1219 Chairman Dan Weaver wrote a letter to the union members in Lima informing them of an investigation into the favorable resolution of Plaintiff's grievance, thereby inciting them against him. Because this argument is unrelated to any alleged violation of the CBA, it is not cognizable in a § 301 action. *See Vencl*, 137 F.3d at 425 (noting that a "quintessential hybrid 301 claim" is one that

**C.    UAW's 2010 Decision to Reinstate and Reverse Plaintiff's Grievance Resolution**

Plaintiff's complaint alleged that the UAW acted arbitrarily and capriciously when its International Executive Board reversed the 2009 grievance resolution and reinstated the grievance with a new disposition that gave him the option of accepting plant seniority as of his 2006 transfer to Lima or returning to the Sharonville plant. After Plaintiff's 2006 grievance was resolved favorably in 2009, other employees at the Lima plant became upset at what they perceived as Plaintiff improperly jumping the line and being credited with more plant seniority than he deserved. One of the Lima employees, Jeremi Brayton, who like Plaintiff had transferred into Lima as a "quit and rehire" employee, filed a grievance requesting that his plant seniority also be restored. Although local UAW officials initially withdrew Brayton's grievance, the union's International Executive Board eventually considered Brayton's situation alongside the 2009 agreement concerning Plaintiff's plant seniority.

The IEB concluded that, while the "intentions of . . . Fox were rational and honorable," there was no contractual support for Plaintiff's transfer to Lima with his Sharonville plant seniority intact. (R. 41-17, IEB Decision 19.) "The CBAs," it found, "do not provide for hardship resolutions." (*Id.*) The IEB ordered Plaintiff's grievance reinstated and resolved such that Plaintiff could either remain at the Lima plant with his plant seniority based on his 2006 transfer or he could return to the Sharonville plant. Plaintiff argues that the UAW's reversal of its initially favorable disposition of his grievance amounts to arbitrary conduct in breach of its duty to represent him fairly.

---

implicates the CBA); *see also Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1179 (7th Cir. 1993) (finding that a § 301 claim "is necessarily founded on the collective bargaining agreement").

Plaintiff does not dispute the accuracy of the UAW's ultimate determination that there was no contractual support for maintaining his Sharonville plant seniority when he was transferred to Lima. He seems to argue that simply by changing positions, the UAW acted arbitrarily. However, this argument is tantamount to asserting that the judiciary acts arbitrarily when an appellate court reverses a lower court. The collective bargaining agreement between the UAW and Ford expressly recognizes the validity and authority of the union's internal appeals process. That process ran its course and ultimately ended unfavorably for Plaintiff, but there was nothing about it that was "so far outside a 'wide range of reasonableness' . . . as to be irrational." *O'Neill*, 499 U.S. at 67 (citation omitted).

The IEB thoughtfully considered the difficulties of Plaintiff's situation but ultimately concluded that he could not be helped without treating countless other Lima employees unfairly. *See Merritt*, 613 F.3d at 619 ("Without more, merely alleging that a union's conduct favored one group over another does not constitute a breach of the duty of fair representation."). Especially considering that the union's former action was not authorized by the CBA, its final decision to undo the 2009 grievance resolution was not arbitrary. *See Williams v. Molpus*, 171 F.3d 360, 366–67 (6th Cir. 1999) ("[A] union does not have to process a grievance that it deems lacks merit, as long as it makes that determination in good faith."). While the UAW could have kept Plaintiff better informed during the grievance process, it is well-accepted that a union does not breach the duty of fair representation merely by failing to consult with an employee before settling his grievance. *Courie*, 577 F.3d at 631 (citing *Whitten v. Ancor Motor Frieght, Inc.*, 521 F.2d 1335, 1341 (6th Cir. 1975)). Because Plaintiff has not produced evidence that any of the UAW's conduct was "arbitrary, discriminatory,

or in bad faith," *Vaca*, 386 U.S. at 190, he cannot establish a breach of the union's duty of fair representation. Therefore, the district court properly granted summary judgment to Defendants.[3]

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment.

---

[3] Like the district court, we decline to reach the issue of Ford's alleged breach of the collective bargaining agreement. Having failed to establish that the UAW breached its duty of fair representation, Plaintiff cannot make out a claim under § 301 of the LMRA. *Courie*, 577 F.3d at 630 ("Liability attaches to neither employer nor union unless fault can be proved as to both.").