NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0201n.06

No. 21-2748

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

LESLEE GRINNELL,

  Plaintiff - Appellee,

v.

CITY OF TAYLOR, MICHIGAN,

  Defendant,

OFFICER CHAD VINES; OFFICER NICHOLAS WELLMAN; OFFICER ADAM LEFFEW; CORPORAL STEVE PORTA; OFFICER ADAM CARROLL,

  Defendants - Appellants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

OPINION

Before: SILER, CLAY, and MURPHY, Circuit Judges.

**CLAY, Circuit Judge.** Plaintiff Leslee Grinnell filed this 42 U.S.C. § 1983 suit against several officers and the City of Taylor, alleging claims of excessive force. The officers filed a motion to dismiss all claims against them, but the district court denied the motion in part. The defendant officers now seek relief in this interlocutory appeal, contending that they are entitled to qualified immunity. For the reasons set forth below, we **AFFIRM** the district court's decision and **REMAND** for further proceedings.

## I. BACKGROUND

### A. Factual Background

Late in the evening of August 31, 2014, Plaintiff Leslee Grinnell was at his home in Taylor, Michigan, when he called his adult daughter, Brittany Ingram, to find out the location of Grinnell's two-year-old son (i.e., Ingram's brother). At first, Ingram said the boy was with her, but then admitted that her mother had taken the child with her on a date with a man she met online. Ingram could tell over the phone that Grinnell was becoming increasingly agitated. Grinnell and Ingram had a number of heated phone exchanges, and eventually Grinnell said to Ingram, "what [] does it take for you people to leave me alone? Do I have to kill myself or pay somebody to come over here and off me?" (Grinnell Dep. I, R. 72-9, Page ID #1313.)

At some point in the night, Grinnell invited some of his friends over and vented to them. In the midst of the contentious calls between Grinnell and Ingram, the friends left Grinnell's home to get something to eat, leaving Grinnell home alone. Around the same time, Ingram called the City of Taylor Police Department because she was worried Grinnell would harm himself. Ingram told the dispatcher that Grinnell was formerly a member of the military and had firearms inside his home. Several officers were dispatched to Grinnell's home.

Eventually Grinnell's friends returned to his trailer, and they informed Grinnell that the Taylor Police were outside his home. Grinnell asked his friends to convey to the police that he would not be leaving, but invited the officers into his trailer. The officers declined.

Grinnell eventually answered a phone call from Corporal William Brinker, who was located at the police station. Brinker assured Grinnell he had not broken any laws and asked him to exit his trailer and talk with the police. Grinnell was adamant that he did not want to be handcuffed or forcibly taken to the ground, and he expressed fear that he would be beaten by the

police. After speaking with Corporal Brinker for several minutes, Brinker assured Grinnell that no one would lay a hand on him. Grinnell reluctantly agreed to go outside.

While remaining on the phone, Grinnell exited his trailer and stepped onto his front porch. Officers on scene immediately began telling Grinnell to put his hands up. An audio recording seems to suggest that Grinnell at least partially complied by putting one hand up while using his other hand to stay on the phone with Corporal Brinker. A few seconds after Grinnell exited his trailer, Corporal Brinker asked Grinnell, "where ya at, on the porch?" (Audio Recording, R. 72-2, 34:51–34:52.) Grinnell replied, "yeah, I'm walking on the porch." (*Id.*, 34:52–34:54.) For nearly one minute after exiting his trailer, Grinnell remained on the phone with Corporal Brinker.

According to Grinnell, as soon as he stepped off the porch, an officer ran from around the corner of his trailer and punched him in the face. A group of officers threw Grinnell onto the ground, held him facedown, and began hitting, kicking, and choking him. A "blonde" female officer stood off to the side watching. While he was on the ground, Grinnell alleges several officers punched and kicked Grinnell to get him handcuffed. Eventually, the officers succeeded in handcuffing Grinnell. One of the officers gave Grinnell a final kick in the ribs and said, "ha, ha, motherf\*\*ker." (Grinnell Dep. II, R. 72-10, Page ID #1360.) In total, Grinnell estimates that the entire assault lasted for "a minute to a minute and a half." (*Id.*, Page ID ##1352–53.) Grinnell was then transported to the hospital for evaluation.

Grinnell has consistently maintained that he could not see the officers involved in the assault because his face was held in the dirt. Although Grinnell was not able to identify any of the officers or how many officers were specifically involved in the assault, he estimates that "nine of them were standing there" and that six or seven of them were kicking or punching him.

**B. Procedural Background**

On April 27, 2017, Grinnell commenced this lawsuit in the U.S. District Court for the Eastern District of Michigan against the City of Taylor and several unnamed officers. He alleged violations of the Fourth, Eighth, and Fourteenth Amendments under 42 U.S.C. § 1983, and he asserted state law claims alleging assault and battery, intentional infliction of emotional distress, and gross negligence. During discovery, Grinnell learned the names of nine individuals who were involved in the incident. He then amended his complaint to sue Officer Chad Vines, Corporal William Brinker, Officer Nicholas Wellman, Officer Adam Leffew, Corporal Steven Porta, Officer Renee Rosebohm, Officer Adam Carroll, Officer John Regan, and Officer Joe Thivierage.

Grinnell was deposed twice. During both depositions, he made conflicting statements as to whether he could identify the officers who were involved in his case. At times he testified that he could identify some of the officers who were at the scene of his arrest if he could see pictures of them. For example, Grinnell admitted that he could identify the officer who allegedly delivered the first punch and later kicked him "[i]f I see him again." (Grinnell Dep. I, R. 72-9, Page ID #1315.) He later stated that he may be able to identify the officers if he saw them again or saw photographs of them. Grinnell also described the physical characteristics of some of the officers on the scene. For example, he remembers seeing a "heavyset, tall guy," a "blonde [] girl," a "big, tall, built corporal," and "a tall guy, stocky, a little bit of weight on him, white, light brown hair; light-ish brownish hair." (*Id*., Page ID ##1316, 1320–21, 1322.) However, at other times, Grinnell testified that he could not see the officers who were punching and kicking him while he was being handcuffed because "[he] was trying to cover [his] face," and "[his] face was in the dirt." (*Id*., Page ID #1317–18.) At his second deposition, Grinnell testified, consistent with his original deposition: "I was being punched in the face at the time while my head was being smashed in the pavers. . . .

They were smashing my face in the ground. . . . The other people were punching me in the face and holding my head down." (Grinnell Dep. II, R. 72-10, Page ID ##1361–62, 1364.)

Frustrated by Grinnell's conflicting testimony, Defendants' counsel asked Grinnell if he would personally attend the depositions of the officers so that he could state whether that deponent was one of the officers who allegedly violated his rights. Grinnell initially agreed to attend the officers' depositions, but apparently, he never showed up at any of them.

During discovery, Grinnell deposed Officers Vines, Wellman, Leffew, and Carroll, and Corporal Porta. During each of their depositions, these specific Defendants testified that they were actively involved with the takedown and arrest of Grinnell or that they were in a close proximity.

After discovery, all the defendants moved for summary judgment. The district court granted in part and denied in part their motion. First, the district court separated Grinnell's claim of excessive force into three separate acts of force: (1) Grinnell being punched in the face as soon as he stepped off his front stairs, (2) Grinnell being forcibly taken to the ground, and (3) Grinnell being kicked and punched while being handcuffed, including being kicked after he was handcuffed by an officer who said "ha, ha, motherf**ker." Then, considering each alleged act of excessive force separately, the district court considered whether Defendants were entitled to summary judgment.[1]

---

[1] It is unclear whether the district court appropriately segmented the officers' conduct into separate and distinct acts of excessive force. The officers' conduct transpired so quickly, with the officers seemingly acting in concert, that it arguably could be considered a single, continuing act of excessive force. We acknowledge that viewing the officers' conduct as one continuous episode of excessive force could change the analysis. However, because Grinnell has not cross-appealed the grant of summary judgment with respect to certain allegations, nor has he argued before this Court that the partitioning of the officers' conduct into separate acts was erroneous, we adopt the district court's view of the case.

The district court acknowledged that a plaintiff typically must allege which specific acts are attributable to each defendant to survive summary judgment. However, in *Fazica v. Jordan*, 926 F.3d 283 (6th Cir. 2019), we permitted a claim to proceed under § 1983 despite the plaintiff's inability to specifically identify the officers. We further clarified in *Pineda v. Hamilton County*, 977 F.3d 483, 493 (6th Cir. 2020), that *Fazica* allows a case to proceed when (1) the plaintiff alleges every defendant committed some constitutional violation, and (2) the plaintiff's inability to identify the defendants is the result of circumstances beyond the plaintiff's control.

Regarding the first alleged act of excessive force—being punched in the face as soon as he stepped off his front stairs—the district court dismissed the claim for failing both *Fazica* elements. Grinnell testified that only one officer had punched him in the face, and the record did not establish that any other Defendants were in close enough proximity to have intervened. Additionally, Grinnell provided a fairly specific description of the officer who he alleges to have punched him, so there was nothing preventing him from identifying the officer.

Regarding Grinnell's second claim of excessive force—that he was violently taken to the ground—the district court held that Grinnell had satisfied both prongs under *Fazica* as to Defendants Wellman and Leffew. However, because Grinnell was emerging from his home after a stand-off and he was refusing to comply with the officers' orders to put his hands up and get on the ground, the district court held the officers' act of forcibly taking Grinnell down was not excessive.

Finally, the district court considered Grinnell's third claim of excessive force—being kicked and punched during and after he was handcuffed. The court extensively considered the Defendants' depositions and found that Officers Vines, Wellman, Leffew, and Carroll, and Corporal Porta testified they were involved with handcuffing Grinnell or that they were nearby

while Grinnell was being handcuffed. Thus, each of these five defendants could be liable under an excessive force theory or a failure to intervene theory. The court also noted that Grinnell repeatedly testified that the officers were holding his face in the dirt, which obstructed his ability to see the Defendants. Because his inability to identify the officers was not his fault, the court held Grinnell had satisfied both elements under *Fazica*. Finally, the court considered whether the use of force was excessive. The gratuitous use of force, especially after a suspect has been restrained, has consistently been held to be excessive. *See, e.g., Morrison v. Bd. Of Trs. of Green Twp*., 583 F.3d 394, 407 (6th Cir. 2009). Therefore, the district court denied the Defendants qualified immunity on the third act of force.

Defendants filed a motion for reconsideration, which the district court granted in part. The court concluded that it erred by considering together the allegations that Grinnell was kicked and punched *while* being handcuffed and the allegation that one officer delivered a final kick and said, "ha, ha, motherf**ker" *after* Grinnell was handcuffed. It held that the final kick was spontaneous and unexpected; and therefore, no Defendant could be liable under a failure to intervene theory. The district court then altered its holding to grant summary judgment as to the final kick. With this alteration to the order, the only claim to survive summary judgment was that Defendants used excessive force by punching and kicking Grinnell only from the time Grinnell was taken to the ground until he was handcuffed.

The remaining Defendants timely appealed the district court's denial of qualified immunity. Because Grinnell has not appealed the district court's grant of summary judgment, the only issue presented in this appeal is whether the district court erred in denying qualified immunity to the Defendants on Grinnell's only remaining claim.

## II.  DISCUSSION

### A.      Standard of Review

This Court reviews denials of summary judgment on qualified immunity grounds *de novo*. *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 275 (6th Cir. 2020).  The relevant inquiry is whether the evidence, viewed in the light most favorable to the non-moving party, "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

### B.      *Fazica* and *Pineda*

To prevail in a § 1983 action, a plaintiff typically must show that the defendants were "personally involved in the [alleged] constitutional violations." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010).  However, Grinnell brings this case as one presenting the rare situation in which a plaintiff is unable to identify which officers are alleged to have committed which unconstitutional acts.  Recently, in *Pineda*, we held that to bring a claim without alleging specific acts against specific defendants, the plaintiff must allege every defendant committed some constitutional violation, and the plaintiff's inability to attribute specific unconstitutional acts to specific defendants must be because of circumstances beyond the plaintiff's control.  977 F.3d at 493; *see also Fazica*, 926 F.3d at 292.  Defendants argue Grinnell fails both elements.

#### i.      Failure to Intervene Claim

As with every § 1983 claim, to survive summary judgment, Grinnell must have pleaded that every Defendant committed some constitutional violation. *Fazica*, 926 F.3d at 292.  "*Fazica* merely relieves the plaintiff of the summary-judgment burden to pinpoint *which* specific officer committed *which* specific unconstitutional act." *Pineda*, 977 F.3d at 493 (emphasis in original).  The usual way to ensure that all defendants may be liable for some constitutional violation is by

bringing a failure to intervene claim. In *Pineda*, we expressed concern as to "whether a plaintiff can raise this type of failure-to-intervene claim in summary-judgment briefing without adequately pleading it in a complaint." *Id.*; *see also* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2723 (3d ed. Supp. 2005) ("A non-moving party plaintiff may not raise a new legal claim for the first time in response to the opposing party's summary judgment motion. At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Rule 15(a).").

Defendants argue that because Grinnell did not specifically enumerate a failure to intervene claim in his complaint, no such claim has been pleaded. Consequently, according to Defendants, without a failure to intervene claim, Grinnell fails *Fazica*'s first element. The district court considered this argument and concluded that in addition to his claims of excessive force, "Grinnell also states a claim for the officers who failed to intervene to stop this allegedly excessive force." (Op. & Order, R. 80., Page ID # 2231.)

From the commencement of a lawsuit through discovery, the Federal Rules of Civil Procedure "provide for liberal notice pleading." *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005); *see* Fed. R. Civ. P. 15(a). But once discovery closes and a party moves for summary judgment, "the liberal pleading standards under . . . [the Federal Rules] are inapplicable." *Id.* (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (per curiam)). Instead, when a party is alleged to be asserting a new claim at the summary judgment stage, the inquiry is whether the party is attempting to expand the claims already brought. *Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007) ("To the extent [a party] seeks to expand its claims to assert new theories, it may not do so in response to summary judgment."). To help assess whether a party is seeking to expand its claims,

9

courts consider whether the allegedly new claim causes "unfair surprise" to the defendant. *Tucker*, 407 F.3d at 788.

In the present case, Grinnell is not attempting to expand his complaint to include a failure to intervene claim. In at least two instances, Grinnell alleged in his amended complaint that Defendants did not intervene. First, he alleged that Defendants "were obligated to stop [the officers] from the brutal, unjustified physical attack inflicted on Plaintiff." (Am. Compl., R. 48, Page ID #668.) A few paragraphs later, Grinnell reiterated this allegation, pleading, "none of the other officers at the scene came to the rescue of Plaintiff, nor did they attempt to restrain the assaulting officers . . . ." (*Id.*, Page ID #671.) Although Grinnell did not use the phrase "failure to intervene," he alleged conduct that, for all intents and purposes, put Defendants on notice that he intended to bring a failure to intervene claim. *See Bard v. Brown County*, 970 F.3d 738, 750 (6th Cir. 2020) (holding plaintiff did not "expand" her complaint when "the parameters of her § 1983 claim . . . were the same at summary judgment as they were when she filed her Amended Complaint."). Thus, when Grinnell mentioned a failure to intervene claim in his opposition to summary judgment, he was not seeking to expand his complaint to include a new claim; he was referring to a claim that was alleged in his amended complaint.

Nor does reading his complaint to include a failure to intervene claim cause Defendants unfair surprise. During Grinnell's first deposition, counsel for Defendants clarified that Grinnell intended to bring a failure to intervene claim:

Q: The question is: Did she do anything wrong? And if so, what did she do?
GRINNELL: She didn't speak up and stop it when I was handcuffed. She should have said hey, he's handcuffed.
. . .
Q: Your complaint is that she didn't try to stop what was happening?
GRINNELL: Yes.

(Grinnell Dep. I, R. 72-9, Page ID #1317.)  Like his amended complaint, Grinnell did not use the phrase "failure to intervene."  Nevertheless, the record is quite clear that he intended to bring such a claim, and that Defendants had notice of his intent.  It was only when seeking summary judgment that Defendants decided to question whether such a claim was actually raised.  Accordingly, we hold that Grinnell has pleaded a failure to intervene claim.

Accepting that Grinnell has pleaded a failure to intervene claim, the question then becomes whether Defendants are entitled to summary judgment on such claim.  An officer may be liable for failing to intervene when, "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring."  *Floyd v. City of Detroit*, 518 F.3d 398, 406 (6th Cir. 2008) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)).  Because the Defendants all testified that they were in a close enough proximity to intervene, the most important consideration in this appeal is how long the application of excessive force lasted.  "[W]here the 'act of excessive force unfolds in a matter of seconds, the second requirement is generally not satisfied.'"  *Alexander v. Carter for Byrd*, 733 F. App'x 256, 265 (6th Cir. 2018) (quoting *Pennington v. Terry*, 644 F. App'x 533, 548 (6th Cir. 2016)).  In *Pineda*, we held that "an excessive use of force lasting ten seconds or less does not give a defendant enough time to perceive the incident and intervene to stop such force."  977 F.3d at 493 (quotation omitted).  But of course, the longer a defendant is alleged to have used excessive force, the more likely other officers will have had an opportunity to intervene.  For example, in *Goodwin v. City of Painesville*, 781 F.3d 314, 329 (6th Cir. 2015), we held a twenty-one second tasing followed by an additional five-second tasing was long enough for other officers to intervene.

Because this is an appeal of a denial of qualified immunity, the Court should adopt Grinnell's theory of events. *See Jefferson v. Lewis*, 594 F.3d 454, 459 (6th Cir. 2010) ("[T]o bring an interlocutory appeal of a qualified immunity ruling, the defendant must be willing to concede the plaintiff's version of the facts for purposes of the appeal."). However, when a party's recollection of the facts is contradicted by undisputed video or audio records, the Court need not accept the non-movant's version of events. *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007); *Coble v. City of White House*, 634 F.3d 865, 869 (6th Cir. 2011) (extending *Scott*'s holding to audio recordings).

Grinnell testified that the assault lasted as long as one-and-a-half minutes. His testimony consistently states that the one-and-a-half-minute timeframe began "as soon as [he] got off [his] stairs." (Grinnell Dep. I, R. 72-9, Page ID #1315.) Defendants try to whittle down the duration of the assault by claiming the audio recording captured by the Taylor Police Department proves that for approximately one minute of the one-and-a-half-minute timeframe, Defendants were not assaulting him. Therefore, according to Defendants, all acts of excessive force must have occurred in, at most, thirty seconds. This misconstrues the evidence and ignores Grinnell's testimony.

It is undisputed that for a span of approximately one minute after Grinnell exited his home he was not being assaulted. Grinnell does not challenge the authenticity of the audio recording, which irrefutably proves this. Where Defendants err, however, is claiming that the audio recording and Grinnell's recollection of events contradict. The audio recording captured events that occurred *before* Grinnell stepped off his front stairs. We know the audio recording captured sounds from before Grinnell stepped off his stairs because after Grinnell told Corporal Brinker over the phone that he would go outside, there were a few seconds of silence. Corporal Brinker then asked Grinnell, "where ya at, on the porch?" (Audio Recording, R. 72-2, 34:51–34:52.) Grinnell replied,

"yeah, I'm walking on the porch." (*Id.*, 34:52–34:54.) Finally, at the very end of the audio recording, just before the recording ends, sounds of a struggle can be heard. Inferring the facts in Grinnell's favor, the one-and-a-half-minute assault began just as the recording ended. Because the audio recording only captures a few seconds of the assault, the recording cannot be said to "blatantly contradict" Grinnell's theory that the assault went on for 90 seconds. *Scott*, 550 U.S. at 380–81. Therefore, we adhere to the facts as Grinnell has alleged them and presume the assault lasted one-and-a-half minutes.

Besides the argument that the events unfolded rapidly, Defendants offer no reason that they could not intervene during the prolonged use of excessive force. One-and-a-half minutes is surely enough time to perceive the use of excessive force and intervene. Thus, accepting Grinnell's theory of events, and even accounting for the undisputed audio recording, Defendants may be liable for failing to intervene.

### ii. Circumstances Beyond Plaintiff's Control

In addition to alleging a constitutional violation against every Defendant, Grinnell must also prove that his inability to identify the defendants is a result of circumstances beyond the plaintiff's control. *Pineda*, 977 F.3d at 493. Defendants argue that based on Grinnell's depositions, he has the ability to identify the officers, but is simply refusing to do so.

In general, appeals may only be taken from final judgments. *Cunningham v. Hamilton County*, 527 U.S. 198, 200 (1999); 28 U.S.C. § 1291. Ordinarily, denials of summary judgment are not final decisions. *DiLuzio v. Village of Yorkville*, 796 F.3d 604, 609 (6th Cir. 2015). Nevertheless, the Supreme Court has permitted interlocutory appeals of "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). Stated differently, appeals from a denial of qualified immunity are

limited to "'purely legal' questions." *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 276 (6th Cir. 2020) (quoting *Mitchell*, 472 U.S. at 528 n.9). "[T]o bring an interlocutory appeal of a qualified immunity ruling, the defendant must be willing to concede the plaintiff's version of the facts for purposes of the appeal." *Jefferson*, 594 F.3d at 459. When a "defendant's qualified immunity appeal is based solely on his or her disagreement with the plaintiff's facts," this Court lacks jurisdiction to consider the argument. *Ouza*, 969 F.3d at 277.

Grinnell maintains that he cannot identify the officers who allegedly used excessive force. He relies on his testimony, in which he repeatedly stated that Defendants obstructed his ability to identify the Defendants. (*See, e.g,* Grinnell Dep. I, R. 72-9, Page ID #1317 ("I was trying to cover my face."); *Id.*, Page ID #1318 ("My face was in the dirt"); Grinnell Dep. II, R. 72-10, Page ID #1361 ("I was being punched in the face at the time while my head was being smashed in the pavers."); *Id.*, Page ID #1362 ("They were smashing my face in the ground"); *Id.*, Page ID #1364 ("The other people were punching me in the face and holding my head down.").)

The district court extensively considered the depositions and evidence in this case and specifically found that "Grinnell cannot identify any of the officers by name." (Op. & Order, R. 80, Page ID #2224.) The court went on to find that "the actions of the officers prevented him from being able to identify which officers took what actions." (*Id.*, Page ID #2226.) Despite these clear factual findings, Defendants argue that Grinnell may be able to identify the officers. Whether Grinnell can or cannot identify the officers is the exact type of factual dispute unsuitable for an interlocutory appeal of a qualified immunity ruling. To the extent Defendants seek to challenge this factual finding, we lack jurisdiction. *Ouza*, 969 F.3d at 277.

To get around the obvious lack of jurisdiction, Defendants argue that the district court erred by not considering all the evidence. This is unpersuasive for two reasons. First, an essential

characteristic of appeals of denials of qualified immunity is that defendants must accept the plaintiff's version of facts. *Jefferson*, 594 F.3d at 459. Defendants claim to accept Grinnell's theory of the case, yet they extensively argue why Grinnell's version of events is incorrect. Defendants raised this factual dispute before the district court, and the court rejected their argument, finding Grinnell could not identify the officers. This appeal is not the proper method to rehash factual disputes. Second, even if the Court were to consider Defendants' argument, all the evidence on which they rely was fully considered by the district court. Defendants point to a few isolated statements Grinnell made during his deposition. But the district court's opinion denying Defendants qualified immunity extensively considered Grinnell's deposition testimony. The fact that the district court did not mention a specific statement does not suggest the court failed to consider the evidence. Indeed, a review of the district court's order denying qualified immunity shows the district court thoroughly considered Grinnell's testimony.

Accordingly, we lack jurisdiction to consider whether Grinnell can identify which Defendants committed which acts.

### III.

For the reasons stated above, we **AFFIRM** the district court's denial of qualified immunity and **REMAND** for proceedings consistent with this opinion.