RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0320p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

ALI PINEDA,

        *Plaintiff-Appellant*,

    *v.*

HAMILTON COUNTY, OHIO; HAMILTON COUNTY SHERIFF'S DEPARTMENT; JIM NEIL, RAYMOND BERRY, WILLIAM COTTON, and GENE NOBLES, in their official and individual capacities,

        *Defendants-Appellees*.

> No. 19-3839

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 1:15-cv-00693—Susan J. Dlott, District Judge.

Decided and Filed:  October 2, 2020

Before:  BATCHELDER, LARSEN, and MURPHY, Circuit Judges.

─────────────

#### COUNSEL

**ON BRIEF:**  Marc D. Mezibov, Brian J. Butler, MEZIBOV BUTLER, Cincinnati, Ohio, for Appellant.  Mark Vollman, Cooper Brown, HAMILTON COUNTY PROSECUTOR'S OFFICE, Cincinnati, Ohio, for Appellees.

─────────────

#### OPINION

─────────────

MURPHY, Circuit Judge.  In a famous tort case, a plaintiff was hit by gunfire when two hunters negligently discharged their shotguns in his direction.  The plaintiff could not identify which of the two hunters had fired the injurious shot, but the court held that both could be found jointly liable.  *See Summers v. Tice*, 199 P.2d 1, 2–5 (Cal. 1948).  The plaintiff in this case,

Ali Pineda, asks us to adopt (and expand) something like this rule for his constitutional claim under 42 U.S.C. § 1983. Three off-duty sheriff's deputies were providing outside security at a Cincinnati night club. Pineda alleges that one of them hit him on the back of the head with a baton and caused a serious brain injury. He brought an excessive-force claim against all three deputies. At the summary-judgment stage, however, Pineda did not identify the specific deputy who struck the blow. He argues that he should be allowed to proceed to trial against all three deputies even though, on his own telling, two are free of fault. We disagree. Unlike the tortfeasors in *Summers* who had *both* been negligent, only *one* deputy in this case allegedly committed a constitutional violation. Because Pineda did not present evidence that would allow a reasonable jury to identify the deputy who did so, we affirm the grant of summary judgment to all three deputies.

I

Around 11:00 p.m. on November 9, 2013, Pineda and his wife attended "Hispanic Night" at the Inner Circle Nightclub in Cincinnati, Ohio. This nightclub relied on private bouncers for security in the establishment. But it contracted with the Hamilton County Sheriff's Office to employ off-duty deputies for security in its large parking lot. Deputies William Cotton and Roy Berry (who are African American) and Deputy Gene Nobles (who is white) worked this night. These off-duty deputies still dressed in their uniforms.

Pineda and his wife spent several hours dancing at the club, and Pineda recalls having three drinks. At closing around 2:30 a.m., other clubgoers got into a fight. The bouncers responded to the ruckus by aggressively pushing all patrons toward the door. Their actions led a crowd to form at the exit. Pineda's wife got ahead of him in the crowd and made it to their car first. When Pineda exited, he saw individuals arguing with a bouncer just past the door. Pineda attempted to defuse the argument and told the individuals to calm down. The bouncer responded by hitting Pineda in the face and chipping two teeth.

The parties dispute what happened next. According to Pineda, a sheriff's deputy who had been standing behind him immediately knocked him unconscious by striking him on the back of the head with his baton. Pineda believes that this deputy was African American. He testified

that he "could recognize [the person] by his face" if he saw him. But two African-American deputies worked that night, and Pineda has never identified the culprit. Three of Pineda's friends generally corroborated his recollection. Luis Alonzo Avila noted that "a black man somewhere between 48 and 50 years old . . . hit him on the back of the head." He expressed uncertainty, though, over whether this man "was security or a police officer." Juana Elia Gomez testified that she saw Pineda fall to the ground after a deputy struck him on the head. Ricardo Antonio Andino likewise described the deputy who hit Pineda as "black," "[t]all, and not too young and not too old." At the time of this strike, Pineda recalled that the three deputies were in different locations. When Pineda's friends attempted to assist him and call 911, one or more of the deputies allegedly impeded their efforts to help.

The deputies tell a different story. They claim that they were in different areas dispersing the crowd and did not witness what happened to Pineda. Deputy Cotton, the superior officer, testified that he had been escorting others out of the bar. When Cotton went outside, he saw Pineda already on the ground with a crowd gathered around him. Deputies Nobles and Berry testified similarly that they heard individuals yelling at each other and found Pineda lying on the ground when they approached to see what was happening. Cotton allegedly tried to discover how Pineda had been injured, but language barriers impeded his efforts. He also said that he called for an ambulance. Each deputy testified that he did not hit anyone with his baton that night and did not see the other deputies do so. At this stage, however, we must accept Pineda's version of events, not the deputies' version.

By everyone's account, Pineda's injuries were significant. He ended up on the ground unconscious and in a pool of blood. Bystanders thought he was dead. Around 3:00 a.m., officers with the Cincinnati Police Department and paramedics arrived at the scene. An ambulance took Pineda to a hospital. He has no memory from the time of the blow until when he was at the hospital. He spent twelve hours in the hospital and the next two weeks lying on a mattress with what he described as "very intense pain" in his head and neck. He could not work for a month. And he still regularly experiences dizziness and headaches.

Officers with the Cincinnati Police Department investigated the incident. At the hospital, an officer wrote a report indicating that Pineda had said that a bouncer assaulted him for no

reason. This report did not mention an assault by a deputy. Five days later, an investigator met with Pineda but had trouble communicating with him. Pineda gave her a note stating: "Without warning the security guard punched me with his fist followed by the Sheriff striking me with his night stick or baton in my head." The investigator told her supervisor about the claim against the deputy, and her supervisor arranged for the note to be sent to the Hamilton County Sheriff's Office.

Chief Deputy Mark Schoonover with the sheriff's office tasked Steve Minnich in internal affairs to investigate Pineda's allegations against the deputy. Minnich spoke with the deputies about the night in question. Yet he was unable to contact Pineda because he had no telephone number or address for him. Minnich also did not coordinate with officers at the Cincinnati Police Department to see if they had Pineda's contact information, admitting later that "[m]aybe I should have." In his report, Minnich noted that the "case will remain open until more evidence can be located." Chief Deputy Schoonover, who had final authority to accept an investigation's findings, agreed with Minnich's decision that the case should remain open.

Pineda brought this suit under 42 U.S.C. § 1983 against Deputies Cotton, Berry, and Nobles along with Hamilton County Sheriff James Neil and the Hamilton County Sheriff's Office. Pineda alleged, among other claims, an excessive-force claim against the three deputies under the Fourth Amendment. He also alleged that the Hamilton County Sheriff's Office and Sheriff Neil had "ratified" the deputy's purported excessive force by failing meaningfully to investigate his accusation.

A magistrate judge recommended that the district court grant summary judgment to all defendants. *Pineda v. Berry*, 2019 WL 3323542, at *9 (S.D. Ohio July 23, 2019). On the excessive-force claim, the magistrate judge reasoned that "neither [Pineda], nor anyone else, has specifically identified who it was that struck" him. *Id.* at *6. On the failure-to-investigate claim, the judge reasoned that, "[a]lthough the investigation may not have been an example of best investigatory practices, it was not so inadequate as to constitute ratification" of excessive force. *Id.* at *8. The district court adopted this recommendation. *Pineda v. Berry*, 2019 WL 4059878, at *1 (S.D. Ohio Aug. 28, 2019). Pineda now appeals, and we review the district court's decision de novo. *Davis v. Echo Valley Condo. Ass'n*, 945 F.3d 483, 489 (6th Cir. 2019).

II

Pineda raises two arguments.  He asserts that the district court should have allowed the jury to decide which deputy, if any, struck him in violation of the Fourth Amendment.  He also asserts that the sheriff's office undertook such a slipshod investigation that a jury could find the office and Sheriff Neil liable on his excessive-force claim under a "ratification" theory.

A.  Excessive-Force Claim Against the Deputies

Section 1983 makes "liable" "[e]very person" who "under color of" state law "subjects, or causes to be subjected," another person "to the deprivation of any rights, privileges, or immunities secured by the Constitution[.]"  42 U.S.C. § 1983.  On appeal, the parties do not dispute that Pineda has met two of the elements that this text requires.  As an initial matter, while the deputies argued in the district court that they were not acting "under color of" state law when providing off-duty security at a nightclub, they have not renewed this argument on appeal.  *See Pineda*, 2019 WL 3323542, at *7 n.9; *cf. Morris v. City of Detroit*, 789 F. App'x 516, 518–19 (6th Cir. 2019).  In addition, the deputies have not disputed that, under the version of events that we must accept, Pineda was subjected to a constitutional "deprivation."  42 U.S.C. § 1983.  The Fourth Amendment protects against "unreasonable" "seizures," U.S. Const. amend. IV, and the Supreme Court has long held that a "seizure" qualifies as "unreasonable" if officers use excessive force in carrying it out, *see Graham v. Connor*, 490 U.S. 386, 395 (1989).  We have noted that the Fourth Amendment would prohibit "a completely unprovoked and unnecessary blow from a policeman's nightstick" during a seizure.  *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988).  And here, Pineda alleges that, without provocation, a deputy struck him on the head with his baton.

This case instead asks whether Pineda may obtain a trial against all three deputies even though only one was the "person" who inflicted the blow and "subject[ed]" him to a constitutional "deprivation."  42 U.S.C. § 1983.  Pineda testified that the person who struck him was *a* deputy, but he has not identified *which* one.  The parties thus treat the evidence as to which deputy struck Pineda as in equipoise.  On this record, we must affirm summary judgment for all three deputies.

1

Our conclusion rests on both a principle of substantive law (42 U.S.C. § 1983) and a principle of procedural law (Federal Rule of Civil Procedure 56(a)). Start with the substantive law. "Section 1983 creates a 'species of tort liability'" for constitutional violations. *Manuel v. City of Joliet*, 137 S. Ct. 911, 916 (2017) (citation omitted); *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 727–28 (1999) (Scalia, J., concurring in part and concurring in the judgment). Given § 1983's roots in the common law of torts, the Supreme Court has instructed us to "look first" to longstanding tort principles when defining the contours of a § 1983 claim. *See Manuel*, 137 S. Ct. at 920; *Filarsky v. Delia*, 566 U.S. 377, 380, 384 (2012). Two traditional tort principles show that a § 1983 plaintiff generally must prove both that a defendant was *personally* at fault and that the defendant's culpable conduct (not somebody else's) *caused* the injury.

As for the first tort principle, a defendant's liability at common law would "only result from his own neglect," not from an associate's neglect. *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 289 (3d Cir. 2018) (quoting *Dunlop v. Munroe*, 11 U.S. 242, 269 (1812)). To give an example, the Supreme Court called it "well settled" that a postmaster could not be liable for a letter lost through a clerk's negligence. *Robertson v. Sichel*, 127 U.S. 507, 516 (1888) (quoting *Keenan v. Southworth*, 110 Mass. 474, 474 (1872)). In this § 1983 context, therefore, the Court has refused to use "*respondeat superior*" theories to find a party liable based on the actions of subordinates. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676–77 (2009); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–95 (1978). Instead, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Each defendant must be "personally involved" in the unconstitutional action. *Burley v. Gagacki*, 729 F.3d 610, 619 (6th Cir. 2013) (quoting *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010)). "Proximity to a wrongdoer does not authorize punishment." *Hessel v. O'Hearn*, 977 F.2d 299, 305 (7th Cir. 1992); *see Burley*, 729 F.3d at 620.

As for the second tort principle, a defendant generally could be found liable at common law only if the plaintiff proved that an injury was caused by the defendant's tortious conduct, not by something or someone else. *See, e.g.*, Restatement (First) of Torts § 430 (Am. Law Inst.

1934); Thomas M. Cooley, *A Treatise on the Law of Torts* 68–77 (1879); 1 Francis Hilliard, *The Law of Torts or Private Wrongs* 78–79 (3d ed., rev. 1866). Many courts noted that a plaintiff's tort claim would fail "if it is just as probable that the injury came from one cause as the other, because he is bound to make out his case by a preponderance of evidence, and the jury must not be left to a mere conjecture, or to act upon a bare possibility." *Taylor v. City of Yonkers*, 11 N.E. 642, 644 (N.Y. 1887); *see, e.g.*, *Wadsworth v. Bos. Elevated Ry. Co.*, 66 N.E. 421, 422 (Mass. 1903); *Knapp v. Chi. & W.M. Ry. Co.*, 72 N.W. 200, 201 (Mich. 1897); *Deschenes v. Concord & M.R.R.*, 46 A. 467, 470 (N.H. 1898); *Orth v. St. Paul, M. & M. Ry. Co.*, 50 N.W. 363, 389 (Minn. 1891). In this § 1983 context, therefore, the Supreme Court has long required proof of a causal connection between the defendant's unconstitutional action and the plaintiff's injury. *See Hartman v. Moore*, 547 U.S. 250, 259–63 (2006); *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997). Reliance on tort law's causation requirement is particularly appropriate under § 1983 because its text requires proof that the defendant "subject[ed], or *cause[d]* to be subjected," the plaintiff to a constitutional deprivation. 42 U.S.C. § 1983 (emphasis added).

Turn to the procedural law. Rule 56 requires a district court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this language, the standard that a movant must meet to obtain summary judgment depends on who will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); 10A Charles A. Wright et al., *Federal Practice and Procedure* § 2727.1, at 490–93 (4th ed. 2016). If the nonmoving party (usually the plaintiff) will bear the burden of proof on a claim, the movant (usually the defendant) need only demonstrate that the nonmoving party has failed to "make a showing sufficient to establish the existence of an essential element" of that claim. *Viet v. Le*, 951 F.3d 818, 823 (6th Cir. 2020) (quoting *Celotex*, 477 U.S. at 322). The defendant (again assuming the defendant is the movant) will satisfy this standard if "the record taken as a whole could not lead a rational trier of fact to find for the" plaintiff on the challenged element. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Critically, to survive a summary-judgment motion, a plaintiff subject to a preponderance-of-the-evidence burden must present enough evidence "to allow a reasonable juror to conclude that the [plaintiff's] position *more likely than not* is true." *Elkins v. Richardson-Merrell, Inc.*, 8 F.3d 1068, 1073 (6th Cir. 1993) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993)) (emphasis added); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Plaintiffs do not meet this burden when, even after viewing the evidence in their favor, the record is in "equipoise" or "evenly balanced" on an essential element's existence. *See Baum-Holland v. Hilton El Con Mgmt., LLC*, 964 F.3d 77, 93 (1st Cir. 2020); *Anderson News, L.L.C. v. Am. Media, Inc.*, 899 F.3d 87, 98 (2d Cir. 2018); *Demo v. Red Roof Inns, Inc.*, 274 F. App'x 477, 478 (6th Cir. 2008); *Harris v. Owens-Corning Fiberglas Corp.*, 102 F.3d 1429, 1433 (7th Cir. 1996). That is, summary judgment for the defendant is proper when the plaintiff's evidence is just "as consistent with" the defendant's freedom from fault "as with" the defendant's liability. *Matsushita*, 475 U.S. at 588. Or, as one court said, "[a] fact that can only be decided by a coin toss has not been proven by a preponderance of the evidence, and cannot be submitted to the jury." *James v. Otis Elevator Co.*, 854 F.2d 429, 432 n.3 (11th Cir. 1988).

Now put these substantive and procedural pieces together. Section 1983 imposes liability only on a defendant who was personally involved in the unconstitutional action that caused the plaintiff's injury. And Rule 56 requires a plaintiff confronting a summary-judgment motion to present evidence from which a jury could conclude that it was more likely than not that a defendant was involved. Under these rules, courts in similar settings have held that "in the face of [a] motion for summary judgment, a § 1983 plaintiff must produce evidence supporting each individual defendant's personal involvement in the alleged violation to bring that defendant to trial." *Jutrowski*, 904 F.3d at 291; *accord Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017); *Rodriguez v. Unknown SAPD Officer*, 1996 WL 46700, at *1 (5th Cir. Jan. 4, 1996) (per curiam). And courts have held that a plaintiff does not meet this burden by showing only that a defendant was "one of" several others who might have committed the unconstitutional act. *Hessel*, 977 F.2d at 305. Take *Jutrowski*. There, one of four officers kicked the plaintiff in the face. 904 F.3d at 286, 292. He brought an excessive-force claim against all four officers. *Id.* at 287. Yet, even after discovery, he still could not identify which officer had kicked him. *Id.* The Third Circuit held that the officers were entitled to summary judgment on this excessive-force

claim. *Id.* at 289–93. It reasoned that § 1983 requires proof of a defendant's personal involvement in an unconstitutional act and that the record was "insufficient for any reasonable jury to identify which, if any, of the Individual Defendants used excessive force." *Id.*; *see also, e.g.*, *Colbert*, 851 F.3d at 657–60.

This case's summary-judgment record compels the same conclusion. As noted, Pineda could not identify the deputy who allegedly struck him. Although he and other witnesses testified that the attacker was African American, two deputies working that night (Cotton and Berry) are African American, and Pineda has also sued the third deputy (Nobles). Even under Pineda's version of events, therefore, he "seeks to proceed to trial against at least [two] defendants who are 'free of liability[.]'" *Jutrowski*, 904 F.3d at 292 (citation omitted). And Pineda has pointed to no circumstantial evidence suggesting that it was more likely Cotton than Berry who landed the blow (or vice versa). *Cf. Abu-Joudeh v. Schneider*, 954 F.3d 842, 851–52 (6th Cir. 2020). With the record in equipoise, Pineda has not presented evidence from which a reasonable jury could conclude that it is "more likely than not" that any specific defendant struck him. *Elkins*, 8 F.3d at 1073 (citation omitted).

2

To be sure, courts have recognized the "bind" in which § 1983 plaintiffs might find themselves if they must always identify the specific officer who inflicted the specific injury when one of several officers might have done so. *Hessel*, 977 F.2d at 305; *see Burley*, 729 F.3d at 622. A plaintiff often may not know the culprit for reasons outside the plaintiff's control— say, because the officers prevented the "plaintiff from observing the person responsible for the damage." *Colbert*, 851 F.3d at 657–58; *see Batson v. Hoover*, 788 F. App'x 1017, 1020–21 (6th Cir. 2019). But courts have permitted other potential theories of liability, such as conspiracy claims, to account for this predicament. *See Jutrowski*, 904 F.3d at 293; *Colbert*, 851 F.3d at 658.

Pineda attempts to invoke one such theory here, relying on our decision in *Fazica v. Jordan*, 926 F.3d 283 (6th Cir. 2019). In *Fazica*, the plaintiff was arrested for drunk driving and taken to jail. *See* 926 F.3d at 285. When she arrived there, officers obstructed her view by

placing a spit mask over her head. *Id.* She alleged that officers then aggressively strip searched her, ripping off her clothes, touching her genitals, and hitting her in the process. *Id.* at 286. The plaintiff brought an excessive-force claim against five officers. *Id.* at 288. They argued that her claim must fail at the summary-judgment stage because she had not "attribute[d] particular uses of force to particular Defendants[.]" *Id.* at 289. We disagreed, recognizing a rule that plaintiffs may proceed to trial if they place each "individual defendant in a small group of officers that committed allegedly unconstitutional acts within each other's presence[.]" *Id.* at 292. That is so even if the plaintiffs cannot "identify clearly which officers committed specific acts during the incident[.]" *Id.*; *see also Batson*, 788 F. App'x at 1021; *Pershell v. Cook*, 430 F. App'x 410, 416 (6th Cir. 2011). For two reasons, Pineda cannot make use of this rule in this case.

Reason One: We have applied *Fazica*'s rule only when a plaintiff presented sufficient "evidence that *each particular defendant* committed a specific constitutional violation." *Fazica*, 926 F.3d at 292 (emphasis added). Like the plaintiff in *Summers v. Tice*, who proved that each of the two hunters had been negligent, 199 P.2d 1, 2 (Cal. 1948), a § 1983 plaintiff must still present evidence from which a jury could find that each defendant engaged in an unconstitutional act. *Fazica* merely relieves the plaintiff of the summary-judgment burden to pinpoint *which* specific officer committed *which* specific unconstitutional act. It does not relieve the plaintiff of the burden to create a triable issue of fact over whether every defendant has violated the Constitution.

The plaintiff in *Fazica* and in several of our other cases used a "failure-to-intervene" theory to meet this requirement to prove an unconstitutional act by every defendant. In this excessive-force context, our court has held that a nearby officer who does not actively participate in the use of excessive force may still violate the Fourth Amendment if the officer fails to intervene to stop a fellow officer's use of such force. *See Batson*, 788 F. App'x at 1020–21; *Fazica*, 926 F.3d at 289; *Burley*, 729 F.3d at 622; *Pershell*, 430 F. App'x at 416; *Binay*, 601 F.3d at 650; *see also Bard v. Brown County*, 970 F.3d 738, 755–56, 756 n.10 (6th Cir. 2020). This theory requires a plaintiff to establish that "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Fazica*, 926 F.3d at 289 (citation omitted).

Here, however, Pineda cannot use a failure-to-intervene theory to show that the two non-attacking deputies violated his Fourth Amendment rights. We have questioned whether a plaintiff can raise this type of failure-to-intervene claim in summary-judgment briefing without adequately pleading it in a complaint. *See Alexander v. Carter for Byrd*, 733 F. App'x 256, 264–65 (6th Cir. 2018); *see also Stephen v. Hanley*, 376 F. App'x 158, 159–60 (2d Cir. 2010); *Harper v. Albert*, 400 F.3d 1052, 1062–63 (7th Cir. 2005). But Pineda has not even attempted to raise the claim *on appeal*. To the contrary, he concedes that the summary-judgment evidence would doom such a claim. That is for good reason. Pineda's evidence suggested that the attacking deputy hit him suddenly and only one time while the other deputies were at different locations. Yet our caselaw suggests that "an excessive use of force lasting ten seconds or less does not give a defendant 'enough time to perceive the incident and intervene' to stop such force." *Alexander*, 733 F. App'x at 265 (citation omitted); *cf. Miller v. Gonzalez*, 761 F.3d 822, 826–27 (7th Cir. 2014); *Hadley v. Gutierrez*, 526 F.3d 1324, 1330–31 (11th Cir. 2008). So two of the deputies in this case committed no harmful acts and "are innocent in a way in which the defendants in *Summers* and [*Fazica*] were not[.]" *Hessel*, 977 F.2d at 305.

Reason Two: We have applied *Fazica*'s rule only when "circumstances beyond [the plaintiff's] control" made the plaintiff "unable" to learn the identity of the defendants who violated the plaintiff's constitutional rights. *Batson*, 788 F. App'x at 1020. In all of our cases, officers have prevented the plaintiff from identifying them. In some, the officers engaged in conduct that impeded a plaintiff's view, such as by pepper spraying the plaintiff, *id.* at 1019, by forcing the plaintiff to wear a spit hood, *Fazica*, 926 F.3d at 284, or by removing the plaintiff's glasses, *Pershell*, 430 F. App'x at 412. In others, the officers wore masks. *See, e.g.*, *Burley*, 729 F.3d at 622; *Binay*, 601 F.3d at 644. In yet another, the plaintiff alleged that the officers' acts resulted in the death of the victim, who was the only non-officer witness. *Bard*, 970 F.3d at 756. Even after discovery in these many cases, the plaintiffs were unable to identify which specific officer engaged in which specific constitutional violation.

Pineda's case lacks this feature too. He has not identified circumstances beyond his control that kept him from learning the identity of the deputy who supposedly struck him. He, for example, has not alleged that the attacking deputy wore a mask or otherwise prevented

Pineda from looking at his face. Pineda does not even argue that he is in fact unable to identify the deputy who struck him. He tells us that he "had the opportunity to actually see the individual who struck him" before it happened and that "he could recognize the officer's face[.]" Appellant Br. 23. Taking Pineda at his word, he could identify the deputy who allegedly committed the constitutional violation yet for some reason insists on taking all three deputies to trial. We agree with the magistrate judge that "such an in-court at-trial identification in a civil trial comes too late." *Pineda*, 2019 WL 3323542, at *7. Section 1983's substantive standards, when combined with Rule 56's procedural standards, required Pineda to produce evidence from which a reasonable jury could find that it was more likely than not that each defendant was "personally involved" in the excessive force. *Burley*, 729 F.3d at 619 (citation omitted). Because Pineda has failed to meet this standard for all three deputies, the district court properly granted them summary judgment on his excessive-force claim.

### B.  Ratification Claim Against the Sheriff's Office and the Sheriff

Pineda also lacks sufficient evidence to proceed to trial with his "ratification" claim against the Hamilton County Sheriff's Office and Sheriff Neil. Unlike a state, "municipalities and other bodies of local government are 'persons'" that can be sued under § 1983. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988) (plurality opinion) (discussing *Monell*, 436 U.S. at 690–91). We assume for this case that the sheriff's office qualifies as a distinct "legal entity" apart from Hamilton County because the defendants have not challenged Pineda's naming of this office. *Cf. Smith v. Leis*, 407 F. App'x 918, 930 (6th Cir. 2011). And although Pineda sued Sheriff Neil in his personal and official capacities, we treat a suit against Neil in his official capacity as analogous to a suit against the local entity. *See Kentucky v. Graham*, 473 U.S. 159, 166–67, 167 n.14 (1985).

In this § 1983 setting, as we have already explained, the Supreme Court has rejected *respondeat superior* theories that subject employers like the Hamilton County Sheriff's Office to liability for their employees' actions. *See Brown*, 520 U.S. at 403. Instead, a plaintiff may hold a local entity such as the sheriff's office liable under § 1983 only if the entity's own unconstitutional "policy" or "custom" caused the plaintiff's injury. *See id.* at 403–05. Likewise, the plaintiff may hold a high-ranking local official such as Sheriff Neil personally liable under

§ 1983 only if that official's own unconstitutional actions caused that injury. *See Beck v. Hamblen County*, 969 F.3d 592, 600 (6th Cir. 2020) (citing *Iqbal*, 556 U.S. at 676).

How does Pineda hope to satisfy these elements here? Pineda (understandably) calls the investigation of his excessive-force allegations by Steve Minnich in internal affairs completely cursory. And he cites two cases from decades ago for the proposition that a sheriff's failure to investigate allegations that deputies committed unconstitutional conduct can be considered a "ratification" of their conduct, thereby subjecting the local entity to liability under § 1983. *See Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1248 (6th Cir. 1989); *Marchese v. Lucas*, 758 F.2d 181, 188–89 (6th Cir. 1985). Since *Leach* and *Marchese*, however, we have clarified the scope of this "ratification" theory in a way that dooms Pineda's claim in this case.

Because municipal liability requires an unconstitutional "policy" or "custom," we have held that an allegation of a *single* failure to investigate a single plaintiff's claim does not suffice. *See Burgess v. Fischer*, 735 F.3d 462, 478–79 (6th Cir. 2013); *Thomas v. City of Chattanooga*, 398 F.3d 426, 433–34 (6th Cir. 2005). As a result, "a claim based on inadequate investigation" requires "not only an inadequate investigation in this instance," but also "a clear and persistent pattern of violations" in earlier instances. *David v. City of Bellevue*, 706 F. App'x 847, 853 (6th Cir. 2017). That is, "there must be multiple earlier inadequate investigations and they must concern comparable claims." *Stewart v. City of Memphis*, 788 F. App'x 341, 344 (6th Cir. 2019). In *Leach*, for example, "there was a record of approximately 14 other instances of similar abuse in a two-year period." *Meirs v. Ottawa County*, __ F. App'x __, 2020 WL 3956857, at *5 (6th Cir. July 13, 2020) (citing *Leach*, 891 F.2d at 1247).

This requirement (that there be multiple failures to investigate) also follows from § 1983's causation element. To protect against *respondeat superior* liability, the Supreme Court has held that § 1983 imposes a "rigorous" causation standard where, as here, a plaintiff seeks to hold a local entity liable for its employee's actions. *Brown*, 520 U.S. at 405. A plaintiff must show that the *entity's* unconstitutional custom—not just the *employee's* unconstitutional action—caused the plaintiff's injury. *Id.* at 404. In this case's context, there must be a "link between" the local entity's failure to investigate and the plaintiff's injury. *Meirs*, 2020 WL 3956857, at *5; *see Smith v. City of Troy*, 874 F.3d 938, 947 (6th Cir. 2017). And an entity's failure to

investigate the plaintiff's specific claim will, by definition, come *after* the employee's action that caused the injury about which the plaintiff complains. Because the injury will have already occurred by the time of the specific investigation, "there can be no causation" from that single failure to investigate. *David*, 706 F. App'x at 853. As the Eleventh Circuit noted, "a single failure to investigate an incident cannot have caused that incident." *Salvato v. Miley*, 790 F.3d 1286, 1297 (11th Cir. 2015); *cf. Ellis ex rel. Pendergrass v Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 701 n.5 (6th Cir. 2006). A series of investigative failures before the plaintiff's injury, by contrast, might at least suggest that the local entity's custom led to the employee's harmful action in the plaintiff's own case. *See Brown*, 520 U.S. at 407.

Under this framework, Pineda lacks sufficient evidence for his failure-to-investigate claim against the Hamilton County Sheriff's Office and Sheriff Neil. Pineda challenges only a single failure to investigate his own excessive-force claim and has made no attempt to "show several separate instances of the alleged rights violation." *Thomas*, 398 F.3d at 434. No matter the adequacy of Steve Minnich's specific investigation, Pineda has not identified evidence from which a reasonable jury could find that the Hamilton County Sheriff's Office has a "policy" or "custom" of systematically failing to investigate excessive-force claims. *Stewart*, 788 F. App'x at 344. Not only that, he has not explained how Minnich's later failure to investigate his one allegation could have caused his earlier injury from the deputy's alleged baton strike. *David*, 706 F. App'x at 853. Lastly, Pineda presents no evidence that Sheriff Neil even knew of his claim, let alone failed to investigate it. And because Neil can be found liable only for his *own* actions, Pineda has no evidence whatsoever against the sheriff in his personal capacity. *See Beck*, 969 F.3d at 600.

In response, Pineda says he need not establish any pattern of failing to investigate. He argues that even a single act from a high-ranking local official can suffice to create a municipal "policy" and that Chief Deputy Mark Schoonover approved of the allegedly faulty investigation. This response does not save his claim. We need not even consider whether Schoonover qualified as a high-ranking official whose actions could qualify as the actions of the "entity" itself. *Cf. Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993). Whether or not that is so, Pineda has still provided no basis for concluding that any failure to investigate his own claim

caused his earlier injury. As we explained when rejecting a similar argument, Schoonover's "after-the-fact approval of the investigation" did not cause Pineda's injury. *Burgess*, 735 F.3d at 479. And a contrary holding "would effectively make the [sheriff's office] liable on the basis of *respondeat superior*, which is specifically prohibited by *Monell*." *Id.*; *see also Smith*, 874 F.3d at 947.

We affirm.